STATE of Missouri, Respondent,

v.

George WHITE, Appellant.

George WHITE, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 64561, 67627.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 16, 1996.

John M. Schilmoeller, Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Randy Hayman, Assistant Attorney General, Jefferson City, for Respondent.

KAROHL, Judge.

George White appeals after a jury trial, conviction and sentence for stealing property over $150 in violation of § 570.030 RSMo 1994, and denial of Rule 29.15 post conviction relief after an evidentiary hearing. We affirm.

On August 31, 1990, White and another man were seen walking out of an Office Depot Store with a cart full of merchandise without paying for the items. At trial, two Office Depot employees, a police officer and a detective testified for the state. White did not testify nor did any witnesses on his behalf. The trial court sentenced White as a prior and persistent offender to eight years imprisonment.

White raises a *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) challenge. He contends the trial court erred in overruling his objection to striking a black venireperson.

■ A trial court's finding will not be set aside unless it is clearly erroneous. *State v. Blankenship,* 830 S.W.2d 1, 15 (Mo. banc 1992). A finding is clearly erroneous if the reviewing court is left with a definite and firm impression a mistake has been made. *Id.*

■ In order to establish a prima facie case of racial discrimination, defendant must show (1) he is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of defendant's race from the venire; and (3) the facts and any other relevant circumstances raise an inference the prosecutor used peremptory challenges to exclude venirepersons from the jury on account of their race. *Blankenship,* 830 S.W.2d at 14. Once the defendant has made a prima facie showing of discrimination, "the burden shifts to the state to come forward with a neutral explanation for challenging black jurors." *Id.* at 15. The state must give clear and reasonably specific explanations for exercising the challenges. *State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc 1992), *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987). The burden then shifts back to the defendant to demonstrate the state's explanations were merely pretextual and racially motivated. *Id.*

■ Here, the state used six of its peremptory challenges to remove black venirepersons. White challenges the removal of

one venireperson, J.B.J. We will review the removal of this particular venireperson only.

The state articulated its reasons for striking J.B.J.:

Judge, the reason I struck [J.B.J.] is that it appears to me during a fairly good portion of my voir dire that she was either sleeping or on—you know, on the verge of dozing on and off with quite a bit of time spent with her eyes closed and her heard downward with her chin resting, almost resting on her chest a portion of the time.

Counsel for White argued he did not notice J.B.J. was inattentive or dozed off. He also indicated the prosecutor failed to notify the court that the person was inattentive before striking her, citing *State v. Metts*, 829 S.W.2d 585, 587–588 (Mo.App.E.D.1992). The trial court made its findings:

The Court didn't have the opportunity to see and observe prospective juror [J.B.J.] so the Court can't say whether that prospective juror was inattentive in that it is difficult to see, as with the court reporter, any of the people beyond the second row because the people in the first row block the view of the second row, but in any event, it's not been this Court's experience with the Assistant Prosecuting Attorney, and her credibility relative to her reasons for striking a particular juror have always been credible with this Court and the Court finds her reason for striking prospective juror [J.B.J] are race neural and therefore the challenge to the use of peremptory strike to excuse prospective juror [J.B.J.] is denied.

■ We find White failed to demonstrate the state's explanation was racially motivated. The prosecutor stated she struck J.B.J. because she was inattentive and on the verge of falling asleep. Inattentiveness has been considered a racially neutral reason for exercising a peremptory challenge. *Metts*, 829 S.W.2d at 587; *Antwine*, 743 S.W.2d at 67; *See State v. Jackson*, 763 S.W.2d 349, 351 (Mo.App.1988); *See State v. Hood*, 745 S.W.2d 785, 787 (Mo.App.1988). The trial court determined the prosecutor exercised her peremptory challenges in a non-discriminatory manner based on the prosecutor's credibility and her past conduct. A court

may consider the prosecutor's demeanor, past conduct, and credibility in making its findings. *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992); *See Antwine*, 743 S.W.2d at 65–66. Purposeful discrimination is a question of fact, *State v. Brinkley*, 753 S.W.2d 927, 929 (Mo. banc 1988); left to the sound discretion of the trial court, *Parker*, 836 S.W.2d at 934.

■ We note, White cites *Metts* to support his claim. In *Metts*, we suggested the state should inform the court of any "inattentiveness" on the part of a prospective juror. *Id.* at 588. This advice, if followed, would remove this issue from trials and appeals. However, failure to follow this suggestion does not constitute reversible error. It merely complicates a fact decision which the trial court must decide. We find the trial court did not err in overruling White's *Batson* objection.

Next, White argues the trial court erred in denying his Rule 29.15 motion for post conviction relief after an evidentiary hearing. We review in accord with Rule 29.15(g) and *State v. Twenter*, 818 S.W.2d 628, 635 (Mo. banc 1991).

■ White asserts his trial attorney was ineffective for two reasons. First, he contends his trial counsel failed to investigate, subpoena and call key defense witnesses to testify: Ramona Fortner and Robert Lawrence. To show ineffective assistance of counsel due to failure to locate and interview witnesses, defendant must show (1) the witnesses could have been located through a reasonable investigation; (2) they are available to testify; and, (3) the testimony would have provided a viable defense. *Twenter*, 818 S.W.2d at 639–640.

■ White's trial counsel testified he spoke with Ramona Fortner and asked her to come to court. The day of trial, she was available to testify, but he strategically decided not to put her on the stand. His reasoning is set forth below:

Essentially I thought that [White] was a pretty sympathetic looking defendant from my perspective, and I didn't think that Ms. Fortner had anything to add to that from

her appearance from the way that she spoke and from the things that she said.

Also her testimony—at least from what she told me on that day—would not have added anything, would not have provided an alibi, would not have added anything to his defense.

\* \* \* \* \* \*

Her details of her recollection of that day were that her daughter was having a birthday party on her birthday that she recalled that day because she was fairly certain that [White] had gone that day to look for a bike as a gift on her birthday, and the details that she could give me were that he left sometime before noon and that she didn't have any real notion of where he went to look for the bike and when he would have gotten back, that he was probably back in the evening.

Counsel testified White agreed with his advice which was not to put Ms. Fortner on the stand. Defense counsel made a strategic decision not to put Ms. Fortner on the stand. Trial strategy is not a basis for a claim for ineffective assistance of counsel. *State v. Parker,* 886 S.W.2d 908, 929 (Mo. banc 1994).

■ Robert Lawrence, the other "alleged" alibi witness, did not appear or testify at the evidentiary hearing for the Rule 29.15 motion. Nor does the record indicate what his testimony would have been. White abandoned his claim with regard to Mr. Lawrence because he failed to present evidence from this witness. *See State v. Boone,* 869 S.W.2d 70, 78 (Mo.App.W.D.1993). There is no evidence to show counsel inadequately investigated potential alibi witnesses.

■ Second, White argues his trial counsel was unprepared due to insufficient time and investigation. Counsel testified he met with White once, but talked to him anywhere from 10 to 15 times on the phone. He testified he spoke with the prosecutor numerous times regarding White's case. Before trial, defense counsel unsuccessfully tried to get a continuance. In his verified motion for continuance, he testified he was recently informed of the existence of alibi witnesses and could only contact Ms. Fortner. He testified if he had obtained a continuance, he would

have taken the deposition of the complaining victim or eyewitness victim, but he said he spoke with her and it appeared a deposition would not have made much difference. The amount of time spent preparing a case is not the sole measure for an attorney's effectiveness. *Tritico v. State,* 767 S.W.2d 563, 564 (Mo.App.1988).

At the motion hearing, counsel testified White avoided discussing the information and trial strategy. White only wanted to discuss various ways of getting released from prison or jail either by bond, plea bargain, or probation. White did not want to discuss the facts of his case because he was quite sure he would hire a private attorney, get a bond reduction, and ultimately be placed on probation. White continually told his counsel that he was planning to get a private attorney, but failed to do so. Defense counsel is not responsible for his client's failure to cooperate in the case. *State v. Brown,* 902 S.W.2d 278, 298 (Mo. banc 1995). We find there is no evidence trial counsel inadequately investigated White's case. The trial court did not clearly err in denying White's post conviction relief.

We affirm.

REINHARD, P.J., and CRANDALL, J., concur.