David W. WATSON, Petitioner–
Appellant,

v.

STATE of Missouri, Respondent–
Respondent.

No. 27645.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 29, 2006.

---

Margaret Mueller Johnston, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

David W. Watson (Watson) appeals from an order denying his amended Rule 24.035 motion for post-conviction relief.[1] Watson's amended motion alleged, *inter alia,* that plea counsel was ineffective for failing to investigate whether Watson was advised of his *Miranda* rights prior to being questioned by police.[2] Following an evidentiary hearing, the motion court decided that Watson abandoned this particular claim of ineffective assistance of counsel by failing to present any evidence to support it at the hearing. On appeal, Watson contends the motion court clearly erred in failing to make findings of fact and conclusions of law concerning this allegation because it was supported by Watson's own testimony. We affirm.

## I. Factual and Procedural History

In February 2002, Watson was charged in a seven-count information with committing the following crimes: Count I—robbery in the first degree, § 569.020; Count

---

1. All references to rules are to the Missouri Court Rules (2006). All references to statutes are to RSMo (2000).

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

II—armed criminal action, § 571.015; Count III—burglary in the second degree, § 569.170; Count IV—felony stealing, § 570.030; Count V—felony stealing, § 570.030; Count VI—armed criminal action, § 571.015; and Count VII—assault in the second degree, § 565.060. He was represented by Michaelle Tobin (plea counsel).

Watson decided to plead guilty to five of the seven charges after reaching a plea agreement with the State. His plea hearing was held in November 2002. At the hearing, Watson's plea petition was admitted in evidence. The petition stated that Watson had told plea counsel "all the facts and circumstances known to me about the charges made against me in the information. I believe that my lawyer is fully informed on all such matters." The petition also contained Watson's admission that he forcibly stole guns, entered the victims' house with the intent to steal property therein, had a gun, attempted injury to one victim and stole the victims' van. Finally, the petition recited the terms of the plea agreement, which was that the State would dismiss Counts II and IV of the information in exchange for Watson's pleas of guilty to Counts I, III, V, VI and VII. The court conducted a lengthy examination of Watson, during which he stated that he had discussed his case with plea counsel and told her everything he knew about it. After questioning Watson, the court accepted his guilty pleas. In February 2003, the court sentenced Watson to serve five concurrent terms ranging from six to twenty years in prison for committing the aforementioned crimes.

In May 2003, Watson filed a timely *pro se* Rule 24.035 motion. Post-conviction counsel was appointed, and she filed an amended motion on Watson's behalf. This motion alleged plea counsel was ineffective for failing to inform Watson that he would have to serve 85% of his sentence before he would be eligible for parole. As to this ground for relief, the amended motion specifically alleged that "had [Watson] been given accurate information about his sentence, there was a reasonable probability that the outcome would have been different in that he would not have pled guilty and would have gone to trial." The amended motion also alleged plea counsel was ineffective for failing to investigate "whether [Watson] was given his Miranda rights prior to being questioned by police" and for failing to file a motion to suppress "evidence of his statements taken without the protection of Miranda." As to this ground for relief, the motion contained no allegation that Watson would not have pled guilty and would have insisted on going to trial if a motion to suppress had been filed and sustained.

The motion court held an evidentiary hearing on Watson's claims. At the outset, the court took judicial notice of the contents of the entire underlying criminal file. Next, the court heard testimony from Watson, three of Watson's relatives and plea counsel. During Watson's direct examination, post-conviction counsel asked Watson whether he had been told by plea counsel that he would have to serve 85% of his sentence before being eligible for parole if he pled guilty to first-degree robbery. Watson said he had not been so advised, and he would not have pled guilty if he had known that information. Later, post-conviction counsel asked if plea counsel told Watson that she investigated his case. Watson answered:

Um, no. I—I never asked her if she investigated my case. I—I guess I assumed that she did investigate my case. But, um, to my knowledge, I was never even received my Miranda rights at the—at the hospital before being questioned. And I—and I don't believe she

even investigated that, whether I was, indeed, read my Miranda rights.

Watson presented no evidence concerning the contents of any statements he allegedly made to police at the hospital.[3] Furthermore, he failed to testify that, if a motion to suppress any such statements had been filed and sustained, he would have gone to trial instead of pleading guilty. Plea counsel was present at the hearing and was called as a witness by the State. During cross-examination, Watson elicited no testimony from plea counsel that she failed to investigate this issue. Moreover, Watson elicited absolutely no testimony from plea counsel concerning such performance and prejudice issues as these: (1) the content of any statements made by Watson at the hospital; (2) whether any such statements were inculpatory; (3) whether there was any factual basis for Watson's contention that he had not been advised of his *Miranda* rights; and (4) if so, whether counsel had any viable grounds to have the statements suppressed.

In December 2005, the motion court entered its findings of fact and conclusions of law in an order denying Watson's claims. The motion court found Watson's testimony and evidence unpersuasive:

> The Court, as trier of fact, had the opportunity to evaluate all of the witnesses and consider all the testimony, and the Court finds unpersuasive the testimony and evidence presented by movant and on behalf of movant at the P.C.R. hearing in support of the P.C.R. motion, including finding unpersuasive movant's claim and testimony from movant and movant's witnesses regarding movant's claims herein, and such claims are therefore denied.

With respect to Watson's allegation that plea counsel was ineffective for failing to file a motion to suppress, the motion court found that Watson abandoned this claim by failing to present evidence to support it. This appeal followed.

## II. Standard of Review

■ Our review of a motion court's ruling on a motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Maberry v. State*, 137 S.W.3d 543, 546 (Mo.App.2004). Since the findings of the motion court are presumptively valid, the clearly erroneous standard is satisfied only if after a review of the entire record, we are left with the definite and firm impression that a mistake has been made. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991); *Maberry*, 137 S.W.3d at 546. Watson bore the burden of proving the grounds asserted for post-conviction relief by a preponderance of the evidence. Rule 24.035(i); *Harris v. State*, 184 S.W.3d 205, 209 (Mo.App.2006). The motion court was not required to believe Watson's testimony, and we must defer to the motion court's credibility determination. *Henderson v. State*, 32 S.W.3d 769, 770 (Mo.App.2000).

## III. Discussion and Decision

■ In Watson's sole point on appeal, he contends the motion court clearly erred in failing to make sufficient findings of fact and conclusions of law on his claim of ineffective assistance of counsel for failing to investigate an alleged *Miranda* violation and file a motion to suppress such evidence. Watson argues the motion court clearly erred in determining that this claim

---

3. Watson was in the hospital to receive treatment for a gunshot wound that he suffered while attempting to steal the victims' van.

was abandoned because Watson's own testimony was sufficient to support the claim. We disagree.

■ It is well-settled that a movant's failure to present evidence at a hearing to provide factual support for a claim in his or her post-conviction motion constitutes an abandonment of that claim. *State v. Nunley,* 980 S.W.2d 290, 293 (Mo. banc 1998); *State v. Brooks,* 916 S.W.2d 454, 456 (Mo.App.1996); *State v. Crawford,* 914 S.W.2d 390, 393 (Mo.App.1996); *State v. White,* 913 S.W.2d 435, 438 (Mo.App.1996); *State v. Boone,* 869 S.W.2d 70, 78 (Mo.App. 1993). The amended motion alleged that plea counsel failed to investigate whether Watson was given a *Miranda* warning at the hospital before being questioned by police. It was Watson's obligation to present substantial evidence to support this allegation. *See* Rule 24.035(i); *Barry v. State,* 850 S.W.2d 348, 350 (Mo. banc 1993); *State v. Hunter,* 840 S.W.2d 850, 864 (Mo. banc 1992). Substantial evidence is competent evidence having probative value from which a trier of fact can reasonably decide the case. *Bond v. California Compensation and Fire Co.,* 963 S.W.2d 692, 696 (Mo.App.1998); *see Flamingo Pools, Spas, Sunrooms & More Store, Inc. v. Penrod,* 993 S.W.2d 588, 590 (Mo.App. 1999).

At the hearing, the only evidence Watson presented to support this allegation was his belief that plea counsel did not investigate the issue. Watson's testimony, however, was not based on personal knowledge because he admittedly had never talked to plea counsel about her investigation of the case. Therefore, Watson's testimony amounted to nothing more than rank speculation or conjecture and had no probative value even though it was admitted without objection. *See, e.g., State v. Howell,* 143 S.W.3d 747, 750 (Mo.App.2004) (if a witness' testimony read as a whole

conclusively demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part, then his testimony on that issue has no probative value); *Hemeyer v. Wilson,* 59 S.W.3d 574, 581 (Mo.App.2001) (same holding); *Thompson v. Western– Southern Life Assur. Co.,* 82 S.W.3d 203, 208 (Mo.App.2002) (employee's statements that were not based on personal knowledge constituted speculation); *Chalet Apartments, Inc. v. Farm & Home Sav. Ass'n, Inc.,* 658 S.W.2d 508, 510 (Mo.App. 1983) (speculative and hypothetical testimony is not probative even if admitted without objection). Plea counsel also testified at the hearing, but Watson adduced no testimony from her that she failed to investigate this claim.

■ Just as importantly, Watson's argument on appeal ignores the fact that he was seeking to set aside his guilty pleas pursuant to Rule 24.035. As we explained in *Hughes v. State,* 204 S.W.3d 376 (Mo. App.2006):

Hughes' allegation about the adequacy of his attorney's discovery must be assessed in light of the accepted principle that "[a] guilty plea generally waives any future complaint the defendant might have about trial counsel's failure to investigate his case." In other words, Hughes' plea of guilty to the charge of second-degree robbery means "any claim of ineffective assistance of counsel is immaterial except to the extent that it impinges the voluntariness and knowledge with which the plea was made." To establish prejudice in the factual context of this case, Hughes must show the existence of a reasonable probability that he would have elected to proceed to trial, rather than entering a guilty plea, but for his counsel's alleged error in failing to view the videotape.

 

*Id.* at 380 (citations omitted). Accordingly, Watson could not prevail on his claim that counsel failed to investigate the *Miranda* issue unless he also presented substantial evidence that he would have elected to proceed to trial if a motion to suppress his statements had been filed and sustained. *See Copas v. State,* 15 S.W.3d 49, 53 (Mo. App.2000); *Gilliland v. State,* 882 S.W.2d 322, 325 (Mo.App.1994). No such testimony was presented. On a more elementary level, Watson's proof of prejudice was further deficient because the record contains no information concerning the nature of any statements he made to police. Absent such evidence, there is no way the motion court could have concluded that such statements were even inculpatory. In light of Watson's utter failure to present any substantial evidence to support this allegation, the motion court correctly concluded that the failure-to-investigate claim was abandoned.

■ Second, even assuming *arguendo* that Watson's testimony was sufficient to support this allegation, the motion court made a specific finding of fact that Watson's testimony was unpersuasive.[4] We defer to the motion court's credibility determination. *Henderson v. State,* 32 S.W.3d 769, 770 (Mo.App.2000); *Estes v. State,* 950 S.W.2d 539, 541–42 (Mo.App. 1997). This finding left Watson's failure-to-investigate claim unsupported by any substantial evidence. Because Watson failed to prove the claim by a preponderance of the evidence, it was properly denied by the motion court. Rule 24.035(i); *Archer v. State,* 931 S.W.2d 473, 476–77 (Mo.App.1996).

After a review of the entire record, we are not left with the definite and firm impression that a mistake has been made.

4. The motion court's decision not to believe Watson's account of what took place at the hospital may have been influenced by his ad-

*Maberry v. State,* 137 S.W.3d 543, 548 (Mo.App.2004). The motion court's findings of fact and conclusions of law are not clearly erroneous. *Id.;* Rule 24.035(k). The motion court's order denying Watson's Rule 24.035 motion is affirmed.

GARRISON and BARNEY, JJ., Concur.

mission that he was under the influence of cocaine, methamphetamine, marijuana and barbiturates at that time.